UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCOS ARELLANO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA DEPARTMENT CORRECTIONS AND REHABILITATION,<br><br>　　　　Defendant. | Case No.: 1:20-cv-00011-SAB (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE TO THIS ACTION<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION TO SUPPRESS DEPOSITION AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 39, 44) |

　　　Plaintiff Marcos Arellano is appearing *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

　　　Currently before the Court is Defendants' motion for summary judgment, filed August 19, 2021.

**I.**

**PROCEDURAL BACKGROUND**

　　　This action is proceeding against the California Department of Corrections and Rehabilitation (CDCR) for violation of the Americans with Disabilities Act (ADA) by excluded him from participating in the extended meal time program.

　　　Defendant filed an answer to the complaint on April 29, 2020. (ECF No. 12.)

///

1

After an unsuccessful settlement conference, the Court issued the discovery and scheduling order on October 9, 2020.

On August 19, 2021, Defendant filed the instant motion for summary judgment for failure to exhaust the administrative remedies and because there is no genuine dispute as to any fact material to Plaintiff's ADA claim against CDCR.

On October 25, 2021, Plaintiff filed a motion to strike his deposition and an opposition to Defendant's motion. (ECF Nos. 44, 46.) Defendant filed a reply on November 3, 2021. (ECF No. 47.)

## II.

## LEGAL STANDARD

**A.   Summary Judgment Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted).

In arriving at these Findings and Recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.

## DISCUSSION

### A.   Plaintiff's Motion to Suppress Deposition

Defendant has submitted and relied on Plaintiff's deposition in moving for summary judgment. In response, Plaintiff moves, under Federal Rule of Civil Procedure 32, to suppress that deposition testimony because he claims he was not afforded the opportunity to review and sign his deposition transcript under Rule 30(e). See Fed. R. Civ. P. 32(d)(4). (ECF No. 44.)

Federal Rule of Civil Procedure 30(e) indeed allows for deponents to review deposition transcripts, but only "[o]n request by the deponent or a party before the deposition is completed." Fed. R. Civ. P. 30(e)(1) ("On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which: (A) to review the transcript or recording; and (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them."). Federal Rule of Civil Procedure 30(f)(3) requires the court report "when paid reasonable charges," to "furnish a copy of the transcript…to any party or the deponent." Fed. R. Civ. P. 30(f)(3).

Plaintiff contends that, during his deposition and on the record, he requested a copy of the transcript for review, and the Deputy Attorney General (DAG) agreed to provide Plaintiff with a copy. (ECF No. 44, Pl. Decl. ¶ 7.) Plaintiff contends the DAG did not provide him a copy of his deposition transcript, and he is unaware if the newly assigned DAG knew Plaintiff had not received the transcript. (Id. ¶¶ 8, 13.)

Defendant does not dispute that Plaintiff requested to review and sign the transcript during the deposition. (Pickus Decl. ¶ 2, Ex. A.) However, the deposing DAG expressly advised Plaintiff that

the *court reporter* would provide Plaintiff a copy of the transcript. (Id. ¶ 3, Ex. B: "I will ask the court - - the court reporter afterwards to send a copy to you in the care of the litigation coordinator." … "Once it is complete and you receive it through the litigation coordinator, you can review it and make changes."). To this end, Defendant submits a letter to the Valley State Prison Litigation Coordinator, E. Vang, which instructed that the transcript be provided to Plaintiff. (Id. ¶ 4, Ex. C.) Thus, Defendant submits that there was no reason to believe that Plaintiff was not provided a copy of the transcript until Plaintiff filed the motion to suppress. (Pickus Decl. ¶ 5.)

Further, nothing in the record suggests any error or irregularity as to how the deposition officer transcribed and prepared the testimony. Plaintiff's testimony, the questions propounded, and objections and statements made during the examination were recorded stenographically by the court reporter, and were thereafter transcribed. (Pickus Decl. ¶ 2.) Rule 30(e) permits corrections in form and substance, not changes that significantly alter Plaintiff's responses to deposition questions. Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc., 397 F.3d 1217, 1225-26 (9th Cir. 2005). Thus, Rule 30(e) allows for corrective, not contradictory, changes. Id. Thus, the substance of Plaintiff's deposition cannot be contradicted, even if he did intend to make corrections to the transcript's form and substance.

Moreover, Defendant submits that Plaintiff was provided a copy of his deposition transcript, which VSP staff confirmed on November 24, 2021. Yet even with an opportunity to review the transcript since that date, Plaintiff identifies no actual problems with how his testimony was transcribed.

Finally, Plaintiff has not shown that the drastic remedy of suppression is the appropriate cure for that alleged violation. See In re Sunset Bay Assocs., 944 F.2d 1503, 1509-10 (9th Cir. 1991) (sworn answers to deposition testimony are admissible on summary judgment, whether deposition is signed or unsigned). Plaintiff simply does not provide enough evidence or argument for the Court to suppress his deposition testimony. Accordingly, Plaintiff's motion to suppress is denied, and the Court considers that testimony in assessing Defendant's motion for summary judgment.

///

///

**B.     Summary of Plaintiff's Allegations**

Plaintiff contends that he suffers a disability entitled to protection under the ADA.  Plaintiff is a longstanding class member of the ADA Armstrong Remedial Plan (ARP).  Plaintiff alleges that the California Department of Corrections and Rehabilitation (CDCR) should have permitted him to be released to the dining hall with the "early eaters", allowed him to attend the medication window after meals, investigated his claims of non-compliance with the ARP, and afforded him extra time to consume his meals.

**C.     Statement of Undisputed Facts[1]**

1. Plaintiff was an inmate incarcerated by CDCR at Valley State Prison (VSP) in Chowchilla, California at all times relevant to this case.  (Compl. at 1, ECF No. 1.)

2. By way of complaint filed January 3, 2020, Plaintiff brings this action under 42 U.S.C. § 12132, alleging that CDCR violated Title II of the ADA by excluding Plaintiff from receiving extra meal time on account of Plaintiff's disability.  (Id.)

3. Plaintiff seeks only monetary damages regarding his claims in this case.  (Pl. Dep. 130:14-24.)

4. Plaintiff is a long-time Armstrong Class Member and has a history of various disabilities.  (Pl. Dep. 76:4-81:1.)

5. Although he is an Armstrong Class Member, Plaintiff does not allege any Armstrong noncompliance issues in the present suit.  (Pl. Dep. 75:23-76:3.)

6. On September 30, 2019, Plaintiff submitted a CDCR Form 7362 requesting to be seen by a dentist due to jaw pain and trouble eating.  (Pl. Dep. 66:10-11.)

7. On October 1, 2019, Plaintiff was seen by a dentist, who diagnosed Plaintiff with Temporomandibular Joint Disease (TMJ).  (Pl. Dep. 111:8-112:8; Ex. H; Declaration of Blair H. Pickus (Pickus Decl.) Ex. B pp. B-5, 6.)

8. On October 17, 2019, Plaintiff was again seen by a dentist.  At Plaintiff's request, his

---

[1] Hereinafter referred to as "UF."

dentist recommended that Plaintiff be given extra time to eat meals due to difficulty opening his mouth and chewing at a normal rate.  (Pl. Doc. Prod., Pickus Decl. Ex. C pp. C-1, 2; Pl. Dep. 114:7-20.)

9. Plaintiff claims to have submitted 54 requests for an interview, commonly referred to as CDCR Form 22s, each spaced out approximately two weeks apart from September 2017 to October 2019 containing the same language.  (Pl. Dep. 35:21-36:3; Pl. Doc. Prod., Pickup Decl. Ex. D.)

10. Form 22 is one page, consisting of three carbon copies.  The top sheet is white, and is known as the original copy.  The original copy is returned to the inmate with a staff member's signature and date of receipt in order to notify the inmate that CDCR received, and is processing the form.  The second layer is canary yellow and is a second copy for the inmate that is returned along with the original, white copy.  The third layer is pink.  This layer is the staff copy of the Form 22.  Finally, the last layer is a Goldenrod copy, which is the final copy issued to the inmate after the relevant staff members has issued a response to the inmate's request.  (Declaration of E. Vang (Vang Decl.) ¶ 5.)

11. The 54 Form 22s that Plaintiff disclosed in discovery are all original, white copies, none of which contain the signature or date of a receiving staff member.  (Vang Decl. ¶ 6.)

12. None of the 54 Forms 22s that Plaintiff claims to have submitted are contained within Plaintiff's central file.  (Vang Decl. ¶¶ 5, 6.)

13. Plaintiff understands the difference between a CDCR Form 22 and Form 1824.  A Form 22 can be used to have an interview with a sergeant or ask for something.  A Form 1824 is an ADA reasonable accommodation request form.  (Pl. Dep. 95:11-15; 117:6-16.)

14. On October 15, 2019, Plaintiff submitted his first, and only Form 1824 requesting extra time to eat.  (Pl. Dep. 117:17-118:3, Ex. H; Pickus Decl. Ex. B, p. B-3.)

15. VSP's Reasonable Accommodation Panel (RAP) reviewed Plaintiff's Form 1824 on October 23, 2019 and granted Plaintiff's request for extra meal time.  (Pl. Dep. Ex. H; Pickus Decl. Ex. B, p. B-4.)

16. Plaintiff was notified of RAP's decision on November 1, 2019.  (Pl. Dep. Ex. H; Pickus Decl. Ex. B, p. B-4.)

17. Between November 1, 2019 and November 13, 2019, custody staff at VSP did not have

proof of Plaintiff's extended meal time chrono. (Pl. Dep. 114:3-10.)

18. Plaintiff filed 602 prison inmate appeal log no. VSP-C-19-02303 on November 15, 2019. (Pl. Dep. 111:15-112:8, Ex. H; Pickus Decl. Ex. B, pp. B-1, 2.)

19. In appeal log no. VSP-C-19-02303, Plaintiff was asking for a chrono reflecting RAP's decision to grant Plaintiff extra time to eat because custody staff around the dining hall requested proof of that chrono prior to allowing Plaintiff to use extra time to eat, and that those requests went unanswered for the previous 36 months. (Pl. Dep. 112:12-114:10; Ex. H; Pickus Decl. Ex. B, p. B-1.)

20. Appeal log no. VSP-C-19-02302 bypassed the first level of review. (Pickus Decl. Ex. B, p. B-1.)

21. Appeal log no. VSP-C-19-02303 was assigned to the second level for review on November 19, 2019. (Pl. Dep. Ex. H; Pickus Decl. Ex. B, p. B-2.)

22. On December 19, 2019, during his second level interview, Plaintiff received a copy of the chrono granting him extra time to eat. (Pl. Dep. 115:2-4, Ex. H; Pickus Decl. Ex. B, p. B-2.)

23. On December 19, 2019, Plaintiff voluntarily withdraw appeal log no. VSP-C-19-2303. (Pl. Dep. 115:16-21, Ex. H; Pickus Decl. Ex. B, p. B-2.)

24. CDCR took no action on appeal log no. VSP-C-19-02302. (Pl. Dep. Ex. H; Pickus Decl. Ex. B, p. B-2.)

25. Appeal log no. VSP-C-19-02303 was the only 602 prison grievance that Plaintiff filed in relationship to the present case. (Pl. Dep. 116:12-117:5.)

26. Plaintiff never wrote, or submitted, a separate 602 prison grievance regarding the alleged non-responses to Plaintiff's 54 Form 22s. (Pl. Dep. 116:12-117:5; 120:5-14.)

**C.     Analysis of Defendant's Motion**

1.     Exhaustion of Administrative Remedies

Defendant argues the undisputed facts demonstrate that (1) Plaintiff cannot prevail on the merits of his claim under the ADA, and (2) Plaintiff failed to exhaust his administrative remedies. When Plaintiff developed TMJ in October 2019, CDCR timely responded to his request for an accommodation for extra time to finish his meals and therefore properly accommodated Plaintiff.

Furthermore, Plaintiff cannot provide evidence of intentional discrimination or deliberate indifference necessary to recovery monetary damages under the ADA.

In opposition, Plaintiff argues that he submitted an inmate appeal in November 2019, in order to receive an accommodation chrono for additional time during meals. (Opp'n at 6, ECF No. 46.) "The appeals coordinator did not told me that I need to follow the CDCR 602 after I received my chrono on the second level of 602, but in section F of CDCR 602 said if you are dissatisfied with second level response, explain reason below…. (citation omitted) Appeal coordinator gave me copy of chrono for extra time during meals, at same time when she interviewed me on (12/19/19)." (Id.)

It is undisputed that Plaintiff filed 602 prison inmate appeal log no. VSP-C-19-02303 on November 15, 2019. (UF 18.) In appeal log no. VSP-C-19-02303, Plaintiff was asking for a chrono reflecting RAP's decision to grant Plaintiff extra time to eat because custody staff around the dining hall requested proof of that chrono prior to allowing Plaintiff to use extra time to eat, and that those requests went unanswered for the previous 36 months. (UF 19.)

Appeal log no. VSP-C-19-02302 bypassed the first level of review. (UF 20.) Appeal log no. VSP-C-19-02303 was assigned to the second level for review on November 19, 2019. (UF 21.) On December 19, 2019, during his second level interview, Plaintiff received a copy of the chrono granting him extra time to eat. (UF 22.) On this same date, Plaintiff voluntarily withdraw appeal log no. VSP-C-19-2303. (UF 23.)

CDCR took no action on appeal log no. VSP-C-19-02302. (UF 24.) Appeal log no. VSP-C-19-02303 was the only 602 prison grievance that Plaintiff filed in relationship to the present case. (UF 25.) Plaintiff never wrote, or submitted, a separate 602 prison grievance regarding the alleged non-responses to Plaintiff's 54 Form 22s. (UF 26.)

Although Plaintiff was provided an ADA chrono, there remained other available remedies required to exhaust his claim through the final level of review. Here, Plaintiff did not appeal the informal resolution of the grievance nor can it be said that the grievance was resolved entirely in Plaintiff's favor as, for instance, there was no investigation into why it allegedly took 36 months for Plaintiff to be provided his accommodation despite the submission of several requests. More specifically, the prison could have modified the method in which it collects Form 22s, it could have

8

changed the way dentists respond to requests for accommodation, or it could have provided for follow up visits with the dentist. Plaintiff provides no reason why the second or third level of appeal could not have fashioned additional remedies if Plaintiff had not withdrawn his appeal.[2] Furthermore, Plaintiff withdrew his appeal before CDCR rendered a decision at the second level of review. (UF 23.) Plaintiff therefore exited the appeal process before he was provided any remedies.

To the extent Plaintiff contends that he was not required to exhaust to the third level of review because he was satisfied with the relief provided at the second level, such argument is without merit. In Harvey v. Jordan, 605 F.3d 681 (9th Cir. 2010), the Ninth Circuit held that the plaintiff "had exhausted the administrative process when the prison officials purported to grant relief that resolved his due process grievance to his satisfaction." Harvey, 605 F.3d at 686. The Ninth Circuit reasoned,

> An inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies. Nor is it the prisoner's responsibility to ensure that prison officials actually provide the relief that they have promised. See Abney v. McGinnis, 380 F.3d 663, 669 (2d Cir.2004) ("A prisoner who has not received promised relief is not required to file a new grievance where doing so may result in a never-ending cycle of exhaustion.").
>
> That [plaintiff] initially requested alternative forms of relief does not change our analysis. Once the prison officials purported to grant relief with which he was satisfied, his exhaustion obligation ended. His complaint had been resolved, or so he was led to believe, and he was not required to appeal the favorable decision. Were we to reach the contrary conclusion, any prisoner who expressed his willingness to accept more than one form of relief—demonstrating a flexibility that increases the likelihood of an outcome satisfactory to both the prisoner and the prison officials—would have no recourse when prison officials purported to grant one of those alternative forms of relief, but then failed to implement their decision.

Harvey, 605 F.3d at 685.

---

[2] In the complaint, Plaintiff alleges, in relevant part, that "CDCR should have: 1) acted upon his oral/written notices to permit him to be released to chow with 'early eaters'; 2) acted upon his oral/written notices to permit him to attend the medication window after meals; 3) acted upon his written notices to investigate his allegations of 'noncompliance'; or 4) afforded him extra time to consume his meals sooner than Dec/2019…." (Compl. at 3, ECF No. 1.)

9

In Benitez v. Cty. of Maricopa, 667 Fed.Appx. 211, 212 (9th Cir. 2016), the Ninth Circuit clarified that the holding of Harvey "turned on the fact that the prisoner was induced into abandoning his appeal by the unfulfilled promise of relief." There, the plaintiff argued that because the prison granted his request for an ADA accommodation, he had no obligation to appeal from the satisfactory resolution of his ADA grievance. Benitez, 667 Fed.Appx. at 212. However, the Ninth Circuit found that the plaintiff's reliance on Harvey v. Jordan was misplaced because in Harvey, it was explained that an "inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies." Id. Thus, Harvey is limited to instances in which the prisoner was induced into abandoning his appeal by the unfulfilled promise of relief. Id. Consequently, Harvey is not applicable to the instant action because Plaintiff does not claim that he abandoned grievance VSP-C-19-02303 by an unfulfilled promise of relief. Furthermore, exhaustion of the administrative remedies is not excused simply because monetary damages are not available. Porter v. Nussle, 534 U.S. 516, 524 (2002). Accordingly, Plaintiff failed to exhaust his administrative remedies, and Defendant's motion for summary judgment should be granted.

### 2. Merits of Claim

Even assuming Plaintiff exhausted the administrative remedies, Defendant argues that Plaintiff cannot prevail on the merits of his claim under the ADA because when he developed TMJ in October 2019, CDCR timely responded and granted his request for an accommodation for extra time to finish his meals. Defendant also argues Plaintiff cannot provide evidence of intentional discrimination or deliberate indifference as required to recover damages under the ADA.

Title II of the ADA, 42 U.S.C. § 12131 et seq., and § 504 of the RA, as amended and codified in 29 U.S.C. § 701 et seq., prohibit discrimination on the basis of a disability in the programs, services or activities of a public entity. Federal regulations require a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

///

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Title II applies to the services, programs, and activities provided for inmates by jails and prisons. Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 208-13 (1998); Simmons v. Navajo Cnty., 609 F.3d 1011, 1021-22 (9th Cir. 2010); Pierce v. Cnty. of Orange, 526 F.3d 1190, 1214-15 (9th Cir. 2008). "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002); accord Simmons, 609 F.3d at 1021; McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004). Determining whether a modification is reasonable (or even required) is necessarily a fact-specific inquiry, requiring analysis of the disabled individual's circumstances and the accommodations that might allow him to meet the program's standards." Castle v. Eurofresh, Inc., 731 F.3d 901, 910-11 (9th Cir. 2013) (citation and internal quotation marks omitted).

Furthermore, Plaintiff can only proceed to recover monetary damages, if he can demonstrate "intentional discrimination on the part of the defendant." Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001). The deliberate indifference standard "requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139.

Here, it is undisputed that Plaintiff was an inmate incarcerated by CDCR at Valley State Prison (VSP) in Chowchilla, California at all times relevant to this case. (UF 1.) By way of complaint filed January 3, 2020, Plaintiff brings this action under 42 U.S.C. § 12132, alleging that CDCR violated Title II of the ADA by excluding Plaintiff from receiving extra meal time on account of Plaintiff's disability. (UF 2.) Plaintiff seeks only monetary damages regarding his claims in this case. (UF 3.)

Plaintiff is a long-time Armstrong Class Member and has a history of various disabilities. (UF 4.) Although he is an Armstrong Class Member, Plaintiff does not allege any Armstrong noncompliance issues in the present suit. (UF 5.)

///

On September 30, 2019, Plaintiff submitted a CDCR Form 7362 requesting to be seen by a dentist due to jaw pain and trouble eating. (UF 6.) On October 1, 2019, Plaintiff was seen by a dentist, who diagnosed Plaintiff with TMJ. (UF 7.) On October 17, 2019, Plaintiff was again seen by a dentist. At Plaintiff's request, his dentist recommended that Plaintiff be given extra time to eat meals due to difficulty opening his mouth and chewing at a normal rate. (UF 8.)

Plaintiff claims to have submitted 54 requests for an interview, commonly referred to as CDCR Form 22s, each spaced out approximately two weeks apart from September 2017 to October 2019 containing the same language. (UF 9.) Form 22 is one page, consisting of three carbon copies. The top sheet is white, and is known as the original copy. The original copy is returned to the inmate with a staff member's signature and date of receipt in order to notify the inmate that CDCR received, and is processing the form. The second layer is canary yellow and is a second copy for the inmate that is returned along with the original, white copy. The third layer is pink. This layer is the staff copy of the Form 22. Finally, the last layer is a Goldenrod copy, which is the final copy issued to the inmate after the relevant staff members has issued a response to the inmate's request. (UF 10.)

The 54 Form 22s that Plaintiff disclosed in discovery are all original, white copies, none of which contain the signature or date of a receiving staff member. (UF 11.) None of the 54 Forms 22s that Plaintiff claims to have submitted are contained within Plaintiff's central file. (UF 12.) Plaintiff understands the difference between a CDCR Form 22 and Form 1824. A Form 22 can be used to have an interview with a sergeant or ask for something. A Form 1824 is an ADA reasonable accommodation request form. (UF 13.)

On October 15, 2019, Plaintiff submitted his first, and only Form 1824 requesting extra time to eat. (UF 14.) VSP's RAP reviewed Plaintiff's Form 1824 on October 23, 2019 and granted Plaintiff's request for extra meal time. (UF 15.) Plaintiff was notified of RAP's decision on November 1, 2019. (UF 16.) Between November 1, 2019 and November 13, 2019, custody staff at VSP did not have proof of Plaintiff's extended meal time chrono. (UF 17.)

Plaintiff specifically alleges that CDCR failed to accommodate his disability by denying him access to extended meal time for 27 months, from September 2017 until December 19, 2019.

However, Plaintiff did not request extended meal time until October 15, 2019 when he submitted a reasonable accommodation request, which was granted on November 1, 2019.  (UF 14-16.)

Although Plaintiff contends that he submitted 54 CDCR Form 22 requests for accommodations for extended meal time, the alleged submissions fail to raise a genuine issue of material fact to defeat summary judgment.  First, the 54 Form 22s presented by Plaintiff do not bear any indica that they were received by CDCR and none of them are contained in Plaintiff's central file.  (UF 10-12.)  It is undisputed that if Plaintiff had submitted these forms, CDCR's receipt of the form would have been acknowledged by signature and date on the original, white copy and returned to Plaintiff.  (UF 10-12.)  Thus, with proper submission, the Form 22s would not be in the blank form as presented by Plaintiff.  Second, a request for accommodation is made by submitting a CDCR Form 1824, not a Form 22.  Indeed, Plaintiff acknowledged at his deposition that he understood the different purposes of submitting a Form 22 and Form 1824: "Form 22 can be used to have an interview with a sergeant or any other officer or to ask for something, but Form 1824 – that one is basically for ADAs." (UF 13.); see also Cal. Code Regs. tit. 15, § 3053 (a CDCR 1824 form is a request for accommodations under the American with Disabilities Act).  Acknowledging the requirement, Plaintiff submitted a Form 1824 requesting an accommodation, and CDCR timely replied.  (UF 14-16.)  Thus, the undisputed evidence demonstrates that CDCR was not deliberately indifferent to Plaintiff's October 15, 2019 reasonable accommodation request, and Plaintiff has not demonstrated entitlement to monetary damages.

In addition, Plaintiff has failed to demonstrate that he was excluded from receiving extra meal time *because of* his disability.  Plaintiff acknowledged at his deposition that any reference to Armstrong does not apply to this case and any alleged Armstrong non-compliance is not an issue in the present case.  (UF 5.)  When asked why Plaintiff believes CDCR intentionally discriminated him, he responded, "If I happen to be the doctor and I have the results of an MRI of a person that is ill, why wouldn't I go ahead and put it into the computer." (Pl. Dep. 127:12-20.)  Plaintiff has failed to produce evidence that CDCR discriminated against him because of his disability.  Rather, the undisputed evidence demonstrates that CDCR responded in a timely manner when Plaintiff submitted

his Form 1824-Request for Accommodation. (UF 14-16.) Consequently, judgment should be entered in favor of CDCR.

## IV.

## ORDER AND RECOMMENDATIONS

Based on the foregoing, it is HEREBY ORDERED that the Clerk of Court shall randomly assign a District Judge to this action.

Further, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be granted; and

2. Judgment be entered in favor of Defendants terminating this action.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **March 29, 2022**

UNITED STATES MAGISTRATE JUDGE